**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**

JUNE MEDICAL SERVICES, LLC *et al.*,

                    Plaintiffs,

v.

REBEKAH GEE, *et al.*,

                    Defendants.

**CASE NO:** 3:17-cv-404-JJB-RLB

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

The Supreme Court's decision last year in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016), reaffirmed decades of precedent: a state may not violate a woman's fundamental constitutional right to abortion by targeting healthcare providers with onerous, unscientific requirements that impose burdens on abortion access but provide no real benefit. Louisiana's Outpatient Abortion Facility Licensing Law ("OAFLL") and the Sham Health Statutes, as implemented by the Louisiana Department of Health ("LDH"), do precisely this. The Complaint sets out a well-pled challenge to these laws' unconstitutional enforcement. It details LDH's excessive OAFLL implementing regulations, its burdensome warrantless inspections of licensed outpatient abortion facilities, its capricious rulemaking, and its arbitrary licensure actions—none of which are imposed on other, comparably safe forms of outpatient healthcare. It pleads facts showing that the requirements LDH imposes as conditions of obtaining and keeping an outpatient abortion facility license under OAFLL have led to the closure of most facilities in the state, yet provide no medical benefit that offsets this burden on abortion access. The Complaint's allegations paint a clear portrait of a state systematically violating women's constitutionally protected right to abortion.

1

The Complaint also states a ripe, justiciable procedural due process claim against certain provisions of OAFLL that permit immediate revocation or suspension of outpatient abortion facilities' licenses, and ripe, justiciable claims that OAFLL violates the Fourth and Fourteenth Amendment rights of abortion providers and their patients by providing for warrantless searches and government intrusion into their private, confidential, personal information.

In urging dismissal, Defendants argue that LDH's abortion regulatory scheme is too complex and intrusive for judicial review. Defendants ask the Court to abstain from exercising its jurisdiction over this federal constitutional case for largely the same reason, and to defer to what they call the State's "unquestionable" interest in the licensing scheme's unconstitutional enforcement. These arguments are meritless and, if credited, would effectively allow any state to violate the Constitution with impunity, provided only that it do so in grand scale. Plaintiffs have alleged constitutional claims requiring review, and Defendants' motion should be denied.

**ARGUMENT**

### I.    Standard of Review

A motion to dismiss "is viewed with disfavor and is rarely granted." *Lahaye v. AstraZeneca Pharm. LP*, No. 14-00111-BAJ-SCR, 2015 WL 1935947, at *2 (M.D. La. Apr. 28, 2015) (Jackson, C.J.) (quotations omitted). A complaint may not be dismissed pursuant to Rules 12(b)(1) or 12(b)(6) "unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *French v. Dade Behring Life Ins. Plan*, 906 F. Supp. 2d 571, 575 (M.D. La. 2012) (emphasis added). The court must "accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Hall v. Louisiana*, 12 F. Supp. 3d 878, 884 (M.D. La. 2014) (Jackson, C.J.). Constitutional claims are not required to be pled with particularity; Rule 8 requires simply "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Michael Clayton Enters. LLC v. Hossley*, No. 13-00537, 2014 WL 4699495, at *3 (M.D. La. Sept. 19, 2014) (Jackson, C.J.).[1]

## II.    Plaintiffs Have Adequately Pled that Defendants' Enforcement of OAFLL and the Sham Health Statutes Violates their Patients' Right to Abortion.

In *Whole Woman's Health*, the Supreme Court affirmed that states cannot limit access to abortion for pretextual reasons and that abortion restrictions are unconstitutional when the burdens they impose on access outweigh the benefits they confer. 136 S. Ct. at 2309–10. Where an abortion restriction's burdens outweigh its benefits, the burdens are "undue" and unconstitutional. "[U]nnecessary health regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion impose an undue burden on the right." *Id.* at 2300, 2309. Because of the fundamental liberty interest at stake, the undue burden standard demands close judicial scrutiny. *Id.* at 2309. In balancing benefits against burdens, a court may not uncritically defer to the state's articulation of its interest, but rather "place[s] considerable weight upon evidence and argument presented in judicial proceedings." *Id.* at 2310.

### A.    Under *Whole Woman's Health*, Allegations that a State's Abortion Restrictions Impose Burdens that Outweigh Any Benefits State an Undue Burden Claim.

A plaintiff states an undue burden claim by alleging facts sufficient to show that a restriction imposes burdens on access to abortion that are not justified by weightier benefits furthering a legitimate state interest. *Id.* at 2309. Defendants argue that Plaintiffs' substantive due process claim—alleging that OAFLL and the Sham Health Statutes as applied and enforced by LDH violate the Fourteenth Amendment by imposing an undue burden on women's right to abortion—should be dismissed because it challenges the "cumulative effect" of those statutes

---

[1] Plaintiffs request leave to replead to the extent Defendants' motion is granted as to any claim. *See Louisiana v. U.S. Dep't of Homeland Sec.*, No. 06-821-JJB, 2007 WL 9602965, at *5 (M.D. La. Mar. 20, 2007).

rather than their "individual" burdens. Def. Br. 3. Disregarding the allegations in the Complaint and Supreme Court precedent regarding fact-based constitutional review, including *Whole Woman's Health*, Defendants assert that challenges to abortion restrictions must be pled and adjudicated "based on the particular effects of specific laws" or not at all. *Id.* at 4. Defendants misconstrue both the Complaint and the law, and their arguments have no legal basis.

An undue burden claim is not limited to an arbitrary subset of the challenged restrictions' burdens. The standard "laid out in [*Planned Parenthood of Southeastern Pennsylvania v.* *Casey*[, 505 U.S. 833 (1992)]" and reaffirmed last year "asks courts to consider whether ***any*** ***burden*** imposed on abortion access is 'undue'" in light of the evidence and weighed against the restrictions' benefits. *Whole Woman's Health*, 136 S. Ct. at 2309–10 (emphasis added).

Defendants' insistence, citing no authority, that each statute or each act enforcing a statute (it is not clear which Defendants are proposing) be considered on its own, without regard to the other burdens the challenged statutes impose, is not just illogical and unprecedented but wholly unsuited to a constitutional challenge. Laws affecting a protected constitutional right such as abortion require more stringent review, including consideration of how they operate and impact real people. *See id.* at 2309 (finding it "wrong to equate the judicial review applicable to the regulation of a constitutionally protected personal liberty with the less strict review applicable where, for example, economic legislation is at issue"). It is well-settled that under fact-based, heightened scrutiny, a court must consider the actual, not hypothetical, effects of the challenged laws, which necessarily requires consideration of the combined effect of laws that operate together.[2] A state cannot transform an unconstitutional restriction into a constitutional

---

[2] *See, e.g.*, *Clingman v. Beaver*, 544 U.S. 581, 607–08 (2005) (O'Connor, J., concurring) ("A panoply of regulations, each apparently defensible when considered alone, may nevertheless have the combined effect of severely restricting [voting]."); *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) ("Some conditions of confinement may establish an Eighth

one by dividing it across multiple statutes or implementing it in pieces in numerous regulations. Abortion is no exception to this general rule.

In *Whole Woman's Health*, the Supreme Court not only considered two different statutory sections in a single challenge, and ruled that each was independently unconstitutional, it also considered the combined effect of the two statutes on abortion access. *Id.* at 2301 ("The *two requirements* erect a particularly high barrier for poor, rural, or disadvantaged women.") (emphasis added); *accord Whole Woman's Health v. Lakey*, 46 F. Supp. 3d 673, 682 (W.D. Tex. 2014) ("[T]he cumulative results of House Bill 2 are that, at most, eight providers would have to handle the abortion demand of the entire state."), *aff'd*, 136 S. Ct. 2292. As that analysis reflects, whether the State accomplishes its goal of restricting access to abortion through one law or many, it is the ***burden on the right*** that a court must consider.

Here, Plaintiffs state a due process claim by alleging that each of the statutes identified in the Complaint[3] is unconstitutional "***as applied and enforced by LDH through its implementing regulations and enforcement practices***." Compl. ¶¶ 22, 221 (emphasis added). That is enough; there is no further requirement that Plaintiffs allege that each would be unconstitutional even if the others did not exist. Likewise, nothing in Plaintiffs' as-applied challenge to one of the

---

Amendment violation 'in combination' when each would not do so alone . . . ."); *Roemer v. Bd. of Pub. Works of Md.*, 426 U.S. 736, 766 (1976) ("The relevant factors . . . are to be considered 'cumulatively' in judging the degree of entanglement [between church and state]."); *Lee v. Keith*, 463 F.3d 763, 769–72 (7th Cir. 2006) (striking down two ballot access restrictions—one of which had been upheld in an earlier, stand-alone challenge—that "combine[d] to severely burden [plaintiff's] First and Fourteenth Amendment rights"); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 242 (4th Cir. 2014) ("By inspecting the different parts of [the law] as if they existed in a vacuum, the district court failed to consider the sum of those parts and their cumulative effect on minority access to the ballot box."), *cert. denied*, 135 S. Ct. 1735 (2015); *Murdock v. Pennsylvania*, 319 U.S. 105, 115 (1943) (discussing the possible "cumulative effect" on itinerant Jehovah's Witnesses of local ordinances restricting residential solicitation).

[3] The challenged statutes are: OAFLL, La. Rev. Stat. §§ 40:2175.1–2175.6 and the term "outpatient abortion facility" in La. Rev. Stat. § 40:2199(A)(1); and the twelve Sham Health Statutes, La. Rev. Stat. §§ 14:32.9, 32.9.1 and La. Rev. Stat. §§ 40:1061.10(A)(1), 1061.10(D)(1), 1061.11, 1061.16(B), 1061.16(C), 1061.17(B), 1061.17(C)(8), 1061.17(G), 1061.19, and 1061.21. *See* Compl. ¶¶ 4, 9, 26, 52–54, 220–28. Defendants are mistaken to the extent they read the Complaint to challenge other statutes.

statutes—OAFLL—requires them to plead how each of the 1,000+ requirements LDH has imposed under it creates an undue burden in a vacuum. Neither Plaintiffs nor this Court are required to parse the regulatory regime so thinly. *See Whole Woman's Health*, 136 S. Ct. at 2319–20 (rejecting Texas's argument that the court should strike down "specific surgical-center regulations that unduly burden the provision of abortions, while leaving in place other[s]," and holding that the statute's severability clause "does not say that courts should go through the individual components of the different, surgical-center statute [sic], let alone the individual *regulations* governing surgical centers to see whether those requirements are severable from each other as applied to abortion facilities").

### B. Plaintiffs Allege Sufficient Facts Showing that OAFLL and the Sham Health Statutes Obstruct Access to Abortion Without Conferring Any Benefits.

The Complaint alleges at length, and with far more detail than Rule 8 requires, that the purpose and effect of LDH's implementation and enforcement of OAFLL and the Sham Health Statutes is to impose burdens on women seeking abortion that far exceed any medical benefit, and thus are unconstitutionally "undue."

The Complaint details the burdens that LDH's OAFLL enforcement strategy places on access to abortion care. Compl. ¶¶ 158–91, 201–19. Plaintiffs have pled facts showing that LDH's imposition of medically unnecessary regulations implementing OAFLL makes obtaining abortion care more invasive, confusing, difficult, and costly for patients, *id*. ¶¶ 23, 161–77, and that its regulations threaten patients' privacy, *id*. ¶¶ 105, 107, 169–70. Plaintiffs allege that LDH's licensing and survey procedures enforcing OAFLL are disproportionately time-consuming and expensive for outpatient abortion facilities as compared to health care providers offering similar or higher-risk procedures, and that they require outpatient abortion facilities to redirect resources away from patient care. *Id*. ¶¶ 95–107, 169–75. Plaintiffs allege that LDH

imposes impossible regulatory compliance burdens pursuant to OAFLL by issuing regulations that allow licensed facilities no time to come into compliance or that are logically impossible to comply with; rescinding and reissuing regulations over a short period of time; and issuing emergency regulations in the absence of an emergency. *Id*. ¶¶ 56, 60–88. These burdens have made it nearly impossible for most outpatient abortion facilities to remain open. *Id*. ¶¶ 59, 83–84, 89–91, 191, 201–02. By forcing the closure of a majority of Louisiana's clinics through its enforcement of OAFLL, LDH has reduced abortion access throughout the state and increased health risks attributable to delayed or illegal abortion. *Id*. ¶¶ 203–19.

The Complaint further alleges that LDH's enforcement of OAFLL imposes a burden on abortion access that outweighs any benefit. Plaintiffs allege in detail that LDH regulations implementing OAFLL have no scientific basis, provide no medical benefit beyond generally applicable law, and are part of the State's long history of attempting to restrict access to abortion, *id*. ¶¶ 23, 60–88, 92–94, 118–47, and that LDH routinely revokes, suspends, and denies outpatient abortion facility licenses and requires compliance with statements of deficiency without any scientific or medical basis for its actions, *id*. ¶¶ 54–57, 68–70, 80–84, 178–90.

The Sham Health Statutes—referred to as such because they have nothing to do with health—are unconstitutional because they impose restrictions on abortion so medically baseless that Louisiana has not imposed anything like them on any other form of comparably low-risk healthcare; rather, they serve the stated purpose of "making it tough to get an abortion in Louisiana." *Id*. ¶ 39. In challenging these statutes, Plaintiffs allege:

- the physician specialty requirements of La. Rev. Stat. §§ 14:32.9, 32.9.1 and La. Rev. Stat. § 40:1061.10(A)(1) have no medical benefit but reduce abortion access and increase cost, *id*. ¶¶ 26, 149–52, 193[4];

---

[4] Defendants are incorrect that the Complaint must state that Hope would hire Dr. Doe 7. *See* Def. Br. 8. The fact that Dr. Doe 7 cannot provide patients abortion care because he is forbidden to do so by the laws Defendants enforce

- the limitations on who may perform the compulsory pre-abortion scripted ultrasound in La. Rev. Stat. § 40:1061.10(D)(1) have no medical benefit but reduce abortion access and increase cost, *id*. ¶¶ 26, 153, 195, 197;

- the restrictions on medication abortion in La. Rev. Stat. § 40:1061.11 have no medical benefit but increase the duration, cost, and complexity of medication abortion, *id*. ¶¶ 26, 154, 194; and

- the materials written by LDH pursuant to La. Rev. Stat. §§ 40:1061.16(B), 1061.17(C)(8) contain false, misleading, and irrelevant statements; and the extensive charting, recordkeeping, and reporting requirements imposed by La. Rev. Stat. §§ 40:1061.16(C)(4), 1061.17(G), 1061.19, and 1061.21 have no medical benefit but increase cost and reduce access, *id*. ¶¶ 26, 155–57, 196–98.

These allegations of burdens and lack of benefits, regarding both OAFLL as implemented by LDH and the Sham Health Statutes, are more than sufficient to state an undue burden claim. No more is required at this stage, and the motion to dismiss the undue burden component of Count I should be denied.

## III.    Plaintiffs' Challenge to OAFLL is Justiciable.

The question posed by Plaintiffs' Complaint is not whether each of LDH's OAFLL implementing regulations or enforcement actions imposes an undue burden in isolation, as Defendants suggest, *see* Def. Br. at 5–9, but whether LDH is exercising its authority to implement OAFLL in violation of the Constitution. In other words, the Complaint states an as-applied challenge to OAFLL, not a thousand facial challenges to a thousand regulatory requirements or licensing decisions. This as-applied challenge to OAFLL is readily justiciable.

Courts have permitted similar challenges to a state agency's unconstitutional abuse of its enforcement authority. *See, e.g.*, *St. Joseph Abbey v. Castille*, 712 F.3d 215 (5th Cir. 2013);

---

is sufficient to establish a justiciable controversy. *Doe v. Bolton*, 410 U.S. 179, 188 (1973) ("The physician is the one against whom these criminal statutes directly operate in the event he procures an abortion that does not meet the statutory exceptions and conditions."). The Complaint also alleges that the requirements cause ongoing harm to Hope and its patients by limiting the pool of hirable healthcare professionals, which reduces patient choice and imposes additional costs that must be passed on to patients. Compl. ¶ 193.

*Carico Invs., Inc. v. Texas Alcoholic Bev. Comm'n*, 439 F. Supp. 2d 736 (S.D. Tex. 2006). In *St. Joseph Abbey*, the plaintiff casket-makers successfully brought a Fourteenth Amendment challenge to a Louisiana licensing scheme that prohibited anyone without a license from a state undertakers' board from making and selling caskets. 712 F.3d at 218, 227. The plaintiffs did "not challenge the Board's authority" to regulate casket sales, *id.* at 220, but sought declaratory and injunctive relief "against the enforcement of the [licensing law] and the practices and policies," which it alleged were "unconstitutional as applied." 835 F. Supp. 2d 149, 151, 160 (E.D. La. 2011). In *Carico*, a distributor of "adult" media brought an as-applied constitutional challenge to enforcement actions by the Texas Alcoholic Beverage Commission ("TABC") which provided for cancellation or suspension of a liquor license if a licensee violated a statute prohibiting liquor retailers from carrying "obscene" materials. 439 F. Supp. 2d at 736–37. The plaintiff maintained that the obscenity statute, as implemented through the licensing law, TABC regulations, and TABC practices of intimidating retailers to cease carrying the plaintiff's products, violated the First Amendment. *Id.* at 737. The court agreed and enjoined the licensing scheme's enforcement as applied to the obscenity statute. *Id.* at 749.

This Complaint is no different. Plaintiffs challenge OAFLL's unconstitutional implementation through LDH's regulatory, licensing, inspection, and rulemaking actions, and have sufficiently identified these. *Compare* Compl. ¶ 23 ("LDH has applied and enforced OAFLL, though its implementing regulations, La. Admin Code tit. 48, §§ 4401-53 . . . .") *with* Pl. Compl., *St. Joseph Abbey*, ¶ 45 ("The relevant regulations are found in Part XXXVII . . . of Title 46 . . . of the Louisiana Administrative Code.") (ECF No. 1) (Attached hereto as Exhibit A). Whether LDH's exercise of authority and implementation of OAFLL is unconstitutional as-applied is well within this Court's authority to decide.

Defendants' contention that this Court cannot assess the constitutionality of OAFLL because it may have to grant and supervise injunctive relief to prevent further unconstitutional enforcement of OAFLL has no merit. *See* Def. Br. 4–5. Injunctive relief is an available and appropriate remedy for unconstitutional enforcement of a state regulatory scheme. *See St. Joseph Abbey*, 835 F. Supp. at 160 (enjoining "practices of the State Board as applied to [casket-makers]"); *Carico*, 439 F. Supp. 2d. at 750 (enjoining enforcement of statute as applied through licensing actions or "via Administrative Rule"). That an injunction may require further supervision by this Court does not alter its availability. The Supreme Court's decision in *Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294, 300–01 (1955), directing district courts to "retain jurisdiction of these cases" while the defendant school districts transitioned from racial segregation to integration, may be the paradigmatic example, but injunctive relief and judicial oversight are frequent and appropriate remedies for constitutional violations by state actors of all kinds. Many federal district courts, including this one, have exercised their authority to issue tailored injunctions requiring government agencies to take specific steps over a specified time to bring their policies and practices in line with the Constitution.[5] The scope of such a remedy is a question for final judgment, not a motion to dismiss, *see Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 331 (2010) (discussing need to tailor remedy to extent of constitutional violation established), but it is well within the Court's authority to award; the fact that it may be

---

[5] *Davis v. East Baton Rouge Parish Sch. Bd.*, 514 F. Supp. 869, 871, 874–82 (M.D. La. 1981) (rejecting the parties' proposals for school district desegregation and devising and ordering its own detailed plans for individual schools). *See also, e.g.*, *United States v. Virginia*, 518 U.S. 515, 547–51 (1996) (remanding for district court to "craft[] a remedy that will end [women's] exclusion from a state-supplied educational opportunity"); *Wise v. Lipscomb*, 437 U.S. 535, 539–41 (1978) (court may impose remedial apportionment plan where electoral districts have been apportioned unconstitutionally); *Hills v. Gautreaux*, 425 U.S. 284, 306 (1976) (where federal housing agency had engaged in systematic racial discrimination, "[t]he nature and scope of the remedial decree to be entered on remand is a matter for the District Court in the exercise of its equitable discretion"); *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1041 (5th Cir. 1982) (affirming "district judge's order requiring the government to submit a procedurally fair plan for the orderly reprocessing of . . . asylum applications").

needed is a reason to *deny* dismissal, not grant it.[6]

Defendants' other non-justiciability arguments are similarly meritless. A statute of limitations does not bar the injunction of an ongoing constitutional violation. *Contra* Def. Br. 7; *e.g. Roe v. Wade*, 410 U.S. 113, 119 (1973) (striking down Texas abortion ban "substantially unchanged" since 1857); *see also, e.g.*, *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997) ("A law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment."). Defendants' mootness argument as to superseded regulations, *see* Def. Br. 7–8, misses the point. These regulations support a finding that LDH's rulemaking practices pursuant to OAFLL serve to restrict abortion; that history is highly relevant and not susceptible to a mootness defense. Plaintiffs, it bears repeating, are challenging OAFLL and twelve Sham Health Statutes, not superseded regulations. Finally, Defendants' claim that Plaintiffs may not assert certain burdens suffered by their patients, such as the disclosure of their records, *see* Def. Br. 8, is directly at odds with precedent requiring courts to consider the real burdens placed on women by the challenged laws, and permitting those burdens to be pled and proved by the clinics that serve them. *Whole Woman's Health*, 136 S. Ct. at 2310–13.

## IV.  *Burford* Abstention is Inappropriate.

Federal courts have a "virtually unflagging" obligation "to adjudicate claims within their jurisdiction." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans ("NOPSI")*, 491 U.S. 350, 359 (1989) (abstention "remains the exception, not the rule"). *Burford* abstention represents an "extraordinary and narrow exception" to federal court jurisdiction that is "rarely"

---

[6] Defendants also misconstrue the separation of powers by arguing that an injunction would subject the Legislature to oversight by this Court. *See* Def. Br. 5. As alleged in the Complaint, LDH and district attorneys enforce OAFLL, and this is a challenge to their enforcement. Thus, an injunction would apply to Defendants, not the Legislature.

employed, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996); it applies only where the issues involved entangle federal courts "in deciding issues of essentially state law and policy," *Aransas Project v. Shaw*, 775 F.3d 641, 649–50 (5th Cir. 2014) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943)), not when they are asked to adjudicate constitutional claims. Courts considering *Burford* abstention evaluate: (1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or local facts; (3) the importance of the state interest; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review. *Id.* at 649. This case meets none of the abstention factors.

As to the first two factors, Plaintiffs' claims arise under the U.S. Constitution and 42 U.S.C. § 1983, not state law. Compl. ¶¶ 220–28. Plaintiffs do not allege that LDH lacks legal authority under state law to engage in rulemaking or licensing, *contra* Def. Br. 11–12; they allege that LDH has abused its licensing authority in violation of federal law, by causing the closure of most of the state's abortion clinics. Compl. ¶¶ 24, 101–02. Plaintiffs are not asking this Court to intervene in individual state licensing decisions or rulemaking processes; allegations regarding LDH's violations of Louisiana law in implementing OAFLL are relevant not to allege a state law claim, but to show that LDH is not furthering a legitimate state interest through permissible means. *See Whole Woman's Health*, 136 S. Ct. at 2310 (addressing, in federal court, allegations that the state was not furthering a legitimate state interest through permissible means); *Aransas*, 775 F.3d at 650 (abstention not appropriate when the case did "not require, as in *Burford*, examining individual permits and rendering decisions in favor of individual permittees").

As to the third and fourth prongs, Defendants claim the State's interest is

"unquestionable" and requires "coherence," Def. Br. 12, but whether that purported state interest has exceeded constitutional limits is the very core of this case. It requires prompt adjudication in federal court, not abstention. *See, e.g.*, *Whole Woman's Health*, 136 S. Ct. at 2309–10 (court may not unquestioningly defer to a state's articulation of an interest). The State has failed to identify any need for "coherence" as that term is used in *Burford*, and certainly no need that outweighs its federal obligation. *See Aransas*, 775 F.3d at 651 (reviewing cases); *NOPSI*, 491 U.S. at 363 (abstention not required "merely because resolution of a federal question may result in the overturning of a state policy" (citation omitted)). Whatever the State's interest here, it does not outweigh the "strong federal interest" in ensuring that states do not abridge constitutional rights. *Aransas*, 775 F.3d at 651; *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014). The fifth factor is irrelevant: there is no specialized forum for reviewing LDH enforcement of state abortion statutes. *Contra Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 316 (5th Cir. 1993) (abstaining where "Louisiana established a special forum for rate cases").

## V.   Plaintiffs' Procedural Due Process Claim is Ripe.

Defendants' attempt to avoid Plaintiffs' procedural due process claim is meritless. Plaintiffs amply allege the legal and practical harms that make their claim ripe for review, and the specific steps they have been forced to take to avoid yet other harms. Withholding court consideration is inappropriate and would result in hardship to Plaintiffs. *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008).

*First*, Plaintiffs allege that OAFLL permits LDH to immediately revoke an outpatient abortion facility's license for *any* violation of federal or state law or regulation, without due process of law, subjecting Plaintiff Hope Medical Group for Women ("Hope") to the constant risk of license suspension or revocation upon failure to comply with its terms. Compl. ¶¶ 24,

101–02. Those facts sufficiently allege legal harm, which inures where, as here, a party has suffered "adverse effects of a strictly legal kind," including "subject[ion] to any civil or criminal liability." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998); *see, e.g.*, *Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 422 (5th Cir. 2001) (license revocation is a "significant civil" penalty).

*Second,* practical harms that Plaintiffs have alleged render a claim ripe by providing "strong reason[s] why [plaintiffs] must bring [their] challenge now in order to get relief." *Ohio Forestry*, 523 U.S. at 733–34. As Plaintiffs have alleged, there is no margin for error: if Hope's license is improperly stripped under OAFLL, its immediate closure would effectively prevent women from exercising their time-sensitive right by decimating the number of abortion providers, lengthening wait times, overcrowding facilities, and forcing many women to travel farther for care, or forego it altogether. *See* Compl. ¶¶ 183, 188, 191, 202–19 (noting closure of all but three outpatient abortion facilities in Louisiana); *Whole Woman's Health*, 136 S. Ct. at 2318 (reviewing harms for closure of most of a state's abortion clinics); *Jackson Women's Health*, 760 F.3d at 452 (same for closure of a state's only abortion clinic).

*Third,* the concrete ways in which Plaintiffs have had to "modify their behavior to avoid future consequences" make this claim ripe. *Roark*, 522 F.3d at 545 (claim is ripe if harms are neither "abstract [n]or hypothetical"). Plaintiffs allege that they expend significant time and resources to comply with the ever-changing regulations underlying OAFLL in order to reduce the risk of arbitrary and unconstitutional deprivation of licensure. *See, e.g.*, Compl. ¶¶ 165–67, 175; *Roark*, 522 F.3d at 545 (finding claim ripe where plaintiffs "must guess the requirements" of the challenged regulation "and then implement those mandates daily to avoid a violation," which would "subject them to heavy fines . . . and possible revocation of their

14

licenses . . . without judicial review"). Managing that risk takes time away from patients; without it, Plaintiffs could devote less time and fewer resources to needless administrative tasks and unwarranted facility requirements and more to the women they serve. Compl. ¶ 175.[7]

LDH's history of arbitrary enforcement establishes a credible threat of similar future conduct and ensures that Plaintiffs' fears are not "imaginary or wholly speculative" and are justiciable even without a currently pending disciplinary action. *Cf. Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2345 (2014) (citing a "history of past enforcement" as "good evidence that the threat of enforcement is not 'chimerical'" and the suit is justiciable, in the standing context); *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 363 (3d Cir. 2014) (finding standing and justiciable claim when the law's application over "the last decade" provided a reasonable fear of enforcement that injuriously diverted the plaintiffs' resources and burdened their constitutionally protected activity). Hope has been subject to adverse actions in the past and continues to face the threat of them.[8] Without immediate review, it will suffer continued impairment of its rights and potentially irremediable losses to its ability to provide constitutionally protected care. "[T]he Court 'would be in no better position to adjudicate the issues in the future than it is now,'" and the case is more than ripe for judicial review. *Fund for La.'s Future v. La. Bd. of Ethics*, 14 Civ. 0368, 2014 WL 1514234, at *9 (E.D. La. Apr. 16, 2014) (quoting *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010)).

*Choice, Inc. of Texas v. Greenstein*, 691 F.3d 710 (5th Cir. 2012), is inapposite. There, the plaintiffs challenged Act 490, an amendment to OAFLL allowing LDH to suspend or revoke

---

[7] In addition, upon receipt of past notices of violation, Hope has previously complied rather than challenge them, based on the fear of immediate suspension of its license that could risk its ability to remain in business.

[8] Defendants incorrectly argue that Hope's history of unconstitutional deprivation has no bearing on Hope's current claim, because "past exposure . . . to illegal conduct" does not "show a present case or controversy," Def. Br. 14 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)), ignoring that Plaintiffs' *current* behavior still exposes them to the laws and adverse consequences they challenge. Plaintiffs have sufficiently pled that LDH's conduct is the but-for cause of their ongoing injury.

a facility's license immediately for any violation of state or federal law or regulation. The challenge was rejected because the plaintiff clinic, Choice, had only challenged Act 490 and not the underlying laws, with which it still had to comply.[9] 691 F.3d at 712, 716. This challenge is different. Plaintiffs challenge the *enforcement* of OAFLL and the constitutional dilemma it poses between complying with unconstitutional requirements and risking loss of Hope's license.

The 2013 Settlement Agreement is not a defense available to Defendants here. It has no bearing on the claims of the physician Plaintiffs, and of the women whose rights they have standing to advance, as they were not parties to it. *See, e.g.*, 15A C.J.S. Compromise & Settlement § 50 ("Parties who choose to resolve litigation through settlement may not dispose of the claims of a third party . . . ."). Moreover, Hope is not reopening its action to reinstate its license, which was the subject of the Settlement Agreement, but seeking instead to challenge the implementation of certain statutes on its own and its patients' behalf. The Settlement Agreement explicitly does not waive future claims concerning unconstitutional implementation of the challenged statutes, of which the facts underlying the earlier lawsuit form but a part of the challenge to one. *Cf. Whole Woman's Health*, 136 S. Ct. at 2306 (allowing the plaintiffs to bring a second suit against a law, where facts had changed since the time of the first suit, and considering both the new and already-established facts). *See* Compl. ¶¶ 89–90, 175–79, 186–91. Hope's agreement to two *past* inspections in the settlement also has no bearing on LDH's *present* practices of immediately and arbitrarily suspending clinic licenses following inspection, and it certainly does not constitute "consent" to the subsequent inspections LDH has conducted and, absent relief, will continue to conduct. Plaintiffs here assert new and separate claims,

---

[9] Defendants erroneously suggest that *Greenstein* found a challenge to OAFLL, rather than to Act 490, non-justiciable. *Compare* Def. Br. 14 ("The Fifth Circuit held that OAFLL 'imposes no new, affirmative obligations' on clinics . . . .") *with Greenstein*, 691 F.3d at 716 ("Act 490 imposes no new affirmative obligation . . . .").

including that LDH's present conduct creates a constant threat of unconstitutional enforcement of OAFLL that could put them out of business, based on injuries much broader than those giving rise to the suit subject to the Settlement Agreement. Defendants' reliance on *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), is inapposite. There, the plaintiff sought to continue litigating the very case she had already settled, notwithstanding that the settlement disposed of the only injury she had incurred. The motion to dismiss Count II should be denied.

## VI.    Plaintiffs Have Pled a Justiciable Fourth Amendment Claim.

Warrantless administrative inspections performed without consent, exigent circumstances, or the opportunity for pre-compliance review—such as those performed by LDH pursuant to OAFLL, *see* Compl. ¶¶ 103–07, 171–75; La. Rev. Stat. § 40:2175.6; La. Admin. Code § 48:4407(B)(1)–(2)—violate the Fourth Amendment. *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2452 (2015) (enjoining warrantless inspections of hotel registers as unconstitutional).

Plaintiffs allege that LDH conducts unconstitutional searches by "com[ing] to a licensed facility unannounced, review[ing] a clinic's written protocols, inspect[ing] the physical facility, equipment, and supplies, and interview[ing] most, if not all, the staff," without a warrant, consent, exigent circumstance, limits on discretion, or any opportunity for pre-compliance review. Compl. ¶¶ 172–73. Plaintiffs allege that they must expend significant resources maintaining records in a state of readiness for inspection and must devote significant time—often days—accommodating surveyors during warrantless inspections. *See id.* ¶¶ 103–07, 172–75. As alleged, the inspections are extremely intrusive and overbroad[10]: every personnel and patient file can be examined, each staff member may be interviewed, and every single page of clinic records

---

[10] Defendants' assertion that inspectors' discretion is limited to reviewing documents and interviewing personnel only as "necessary" or "required," and to performing inspections "at reasonable times," Def. Br. 20, is meaningless—inspectors appear to be free to determine both the scope of what is "necessary" without limitation and what times are "reasonable." Compl. ¶¶ 104–05, 172–74.

can be copied. *Id.* ¶ 172. Withholding review would endorse Defendants' ongoing violation of the Fourth Amendment and impose real and continuing burdens and costs.

Defendants' reliance on the closely regulated industry exception to Fourth Amendment protections is misplaced.[11] The only time the exception is properly applied is to industries that "have such a history of government oversight that *no reasonable expectation of privacy* . . . could exist." *Patel*, 135 S. Ct. at 2454 (emphasis added) (recognizing only four closely regulated industries—liquor sales, firearms dealing, mining, and running an automobile junkyard—and emphasizing that the list of industries should remain small). That exception "clearly does not apply to abortion clinics, where the expectation of privacy is heightened." *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 550 (9th Cir. 2004) ("[T]he clinic provides a service grounded in a fundamental constitutional liberty, and . . . all provision of medical services in private physicians' offices carries with it a high expectation of privacy."). Further, as *Patel* held, what unifies closely regulated industries is that "inherent in the[ir] operation . . . [is] a clear and significant risk to the public welfare." 135 S. Ct. at 2447; *see also Tucson,* 379 F.3d at 549–51; *Margaret S. v. Edwards*, 488 F. Supp. 181, 214–17 (E.D. La. 1980)[12]; *Akron Ctr. for Reprod. Health, Inc. v. City of Akron*, 479 F. Supp. 1172, 1205 (N.D. Ohio 1979). Abortion is one of the safest procedures in contemporary medical practice, Compl. ¶ 115, and poses nothing like the risk to the "public" welfare required to invoke the closely regulated industry exception.[13]

---

[11] Even if reference to the exception were appropriate, its application requires a fact-based analysis that is unsuitable for a motion to dismiss. *Smith v. Regional Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) ("[D]isputed questions of fact are anathema to Rule 12(b)(6) jurisprudence.").

[12] Defendants incorrectly claim that *Margaret S.* is no longer binding because it considered a more limited range of regulations rather than the "broader array of clinic regulations in place now." Def. Br. 17 n.7. Not so. The factors considered then remain the same today: doctors and nurses are still self-regulating and still state-licensed. *See Margaret S.*, 488 F. Supp. at 216.

[13] *United States v. Gonsalves*, 435 F.3d 64 (1st Cir. 2006) is inapposite. There, the court expressly declined to rule on "whether the practice of medicine in general" was closely regulated. 435 F.3d at 76. *Patel* has since settled that

None of the other criteria for the closely regulated industry exception, set forth in *New York v. Burger*, 482 U.S. 691 (1987) are present either. *First*, the government's asserted interest in protecting the health of women obtaining outpatient abortion care via the warrantless searches deserves no weight since comparable healthcare providers, notably physician's offices (which outpatient abortion facilities legally were in Louisiana until 2003, and which they remain in most states), are not subject to warrantless searches. *Second,* the availability of *ex parte* warrants makes warrantless searches unnecessary to achieve "surprise," *contra* Def. Br. 18. *See Patel*, 135 S. Ct. at 2454 (rejecting the claim that pre-compliance review would fatally undermine the scheme's efficacy); *accord Margaret S.*, 488 F. Supp. at 216. *Third*, the regime is so uncertain and irregular that it does not provide a constitutionally adequate substitute for a warrant. *See Patel*, 135 S. Ct. at 2448. The mere fact that a business is subject to regulation—even extensive regulation—does not excuse the need for a warrant. If every regulated industry could be searched without a warrant, the Fourth Amendment would be meaningless. *See Patel*, 135 S. Ct. at 2455 ("The City wisely refrains from arguing that [the warrantless search provision] itself renders hotels closely regulated"). Warrantless searches are the disfavored exception, and not constitutional here. The motion to dismiss Count III should be denied.

## VII.    Plaintiffs Have Pled a Fourteenth Amendment Privacy Claim.

Through its enforcement of OAFLL's warrantless search provisions and of La. Rev. Stat. § 40:1061.21, LDH collects vast amounts of private, highly confidential information—such as images of the insides of women's bodies and personnel files of clinic staff—without providing for safeguards against its improper disclosure (either within LDH or to third parties), and without any legitimate health purpose. Compl. ¶¶ 107, 169. Because individuals have a Fourteenth

---

the government's creation of a regulatory scheme enforced by warrantless inspections cannot itself invoke the "closely regulated" exception to the Fourth Amendment's bar of warrantless searches. *Patel*, 135 S. Ct. at 2455.

Amendment privacy right against the unnecessary disclosure of medical records or employee information, either to the public or "an unbounded large number of [Health Department] employees," these allegations state a claim. *See Tucson Women's Clinic*, 379 F.3d at 551–54. Defendants' uncited assertion that Plaintiffs cannot assert this claim on their own behalf and on behalf of their patients is not the law. *Contra id*. Defendants further misstate the law by urging that irrelevant statutes somehow protect this information. Their reliance on HIPAA, the privacy provisions of which do not apply to government agencies, 45 C.F.R. § 160.103; *see also id.* § 164.512 (HIPAA privacy provisions do not apply to disclosures by health care providers that are required by law), and on La Rev. Stat. § 13:3715.3, a rule of evidence regarding discovery of "peer review committee" records, is misplaced and insufficient to defeat the claim. The motion to dismiss the privacy component of Count I should be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Dated: September 29, 2017

Respectfully submitted,

*/s/ Shannon Rose Selden*

Shannon Rose Selden*
Anna Moody*
Amanda M. Bartlett*
Holly S. Wintermute*
DEBEVOISE &
PLIMPTON LLP
919 Third Ave
New York, NY 10022
(212) 909-6000
srselden@debevoise.com

David Brown*
Zoe Levine*
Jenny Ma*
Caroline Sacerdote*
CENTER FOR
REPRODUCTIVE RIGHTS
199 Water St., 22nd Floor
New York, NY 10038
(917) 637-3600
dbrown@reprorights.org

Charles M. (Larry) Samuel, III
La. State Bar No. 11678
RITTENBERG, SAMUEL &
PHELPS LLC
715 Girod St.
New Orleans, LA 70130-3505
(504) 524-5555
samuel@rittenbergsamuel.com

*admitted *pro hac vice*

*Attorneys for Plaintiffs*

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on September 29, 2017, a true and correct copy of the foregoing was served on counsel for Defendants via the Middle District of Louisiana's Electronic Filing System.

s/ *Shannon Rose Selden*
Shannon Rose Selden
srselden@debevoise.com

Dated: September 29, 2017