UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JUNE MEDICAL SERVICES, LLC, ET
AL.

CIVIL ACTION

VERSUS

REBEKAH GEE, ET AL.

NO.: 17-00404-BAJ-RLB

RULING AND ORDER

Before the Court is the **Motion to Dismiss (Doc. 22)** filed by Defendants,

Secretary Rebekah Gee and District Attorney James E. Stewart, Sr., in their official

capacities. Plaintiffs filed an opposition to this motion (Doc. 32), to which Defendants

replied (Doc. 35). The Court held oral arguments on January 30, 2018. (*See* Doc. 56).

For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN**

**PART**.

I.     BACKGROUND

According to Plaintiffs, access to abortion has withered in Louisiana since

2001. Eight abortion clinics have closed, and only three remain. (Doc. 1 ¶¶ 191, 201–

02). Today, there are approximately 312,000 reproductive-aged women for each clinic

in the State, one of the lowest ratios in the entire nation. (*Id.* at ¶ 203). While access

to this constitutionally protected right has steadily declined, the number of laws

governing abortions and abortion providers have drastically increased.

First passed in 2001, the Outpatient Abortion Facility Licensing Laws ("OAFLL")[1] govern the personnel, internal policies, facility, reporting, recordkeeping, and licensing of clinics that perform abortion services. (*Id.* at ¶¶ 4, 50). The Louisiana Legislature substantially revised OAFLL in 2010, and major regulations have been enacted pursuant to the statute, most notably in 2012, 2013, 2015, 2016 and 2017. (*Id.* at ¶¶ 53, 61, 71, 74–75, 77, & 87). Today, OAFLL and its accompanying regulations place over 1,000 individual requirements on outpatient abortion clinics. (*Id.* at ¶ 23). Importantly, one of these laws allows for the warrantless inspection of abortion clinics. (*Id.* at ¶ 103). OAFLL also empowers the secretary of the Louisiana Department of Health ("LDH")[2] to suspend immediately a clinic's license for *any* violation of OAFLL, its regulations, or any other federal or State law or regulation. (*Id.* at ¶ 101).

In addition to OAFLL, which regulates abortion clinics, Louisiana has passed several statutes that purportedly govern the safety of doctors that perform abortions and their patients. (*Id.* at ¶ 26). Plaintiffs challenge twelve specific statutory provisions in their complaint: La. Rev. Stat. § 14:32.9 (criminalizing abortions by non-licensed physicians); § 14:32.9.1 (criminalizing dismemberment abortion); § 40:1061.10(A)(1) (setting qualifications for physicians who perform abortions); § 40:1061.10(D)(1) (requiring that the physician performing the abortion to also perform the mandatory pre-abortion ultrasound); § 40:1061.11 (requiring that the

---

[1] Codified as La. Rev. Stat. §§ 40:2175.1–2175.6, 40:2199(A)(1); La Admin Code tit. 48, §§ 4401–53.

[2] Formerly named the Louisiana Department of Health and Hospitals.

physician who prescribes abortion drugs be in the room when they are first administered); § 40:1061.16(B) (requiring the provision of printed materials to women at least seventy-two hours prior to an abortion); § 40:1061.16(C) (mandating that the printed materials be provided individually, in a private room, and that the abortion clinic keep records concerning women who receive the materials); § 40:1061.17(B) (setting forth informed consent requirements that allegedly include false or misleading information); § 40:1061.17(C)(8) (requiring a "prominent link" to LDH's abortion alternatives and informed consent website on abortion clinics' webpages); § 40:1061.17(G) (requiring physicians to report all women who receive informed consent information to the State); § 40:1061.19 (mandating the retention of certain records); and, § 40:1061.21 (reporting requirements for all abortions performed).

Plaintiffs in this case are June Medical Services, LLC d/b/a Hope Medical Group for Women ("Clinic Plaintiff")—on behalf of its patients, physicians, and staff— and six doctors who perform abortions ("Doctor Plaintiffs").[3] (*Id.* at ¶¶ 13–17). They challenge the Louisiana abortion laws—as applied—on three grounds. First, Plaintiffs claim that the challenged laws and regulations violate their substantive due process rights by placing an undue burden on women seeking an abortion. Second, Plaintiffs claim that the State's power to suspend immediately a clinic's license for any violation of state or federal law violates their procedural due process

---

[3] A seventh doctor, who claimed that he was willing to perform abortions but that he was unable to do so because he is not qualified under Louisiana law, was voluntarily dismissed from this suit. (*See* Doc. 54).

rights.  Third, Plaintiffs allege that the warrantless search provision violates their Fourth Amendment right to privacy.

## II.  LEGAL STANDARD

### A.  Ripeness

Under Federal Rule of Civil Procedure 12(b)(l), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).  In order to "prevent a court without jurisdiction from prematurely dismissing a case with prejudice," a court should consider a Rule 12(b)(l) motion for lack of subject-matter jurisdiction before addressing any motions that concern the merits of a case.  *Id.* at 286–87 (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).  A motion to dismiss under Rule 12(b)(l) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6).  *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

Article III of the United States Constitution grants federal courts the subject matter jurisdiction "to decide only actual cases or controversies." *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012).  "The justiciability doctrines of standing, mootness, political question, and ripeness 'all originate in Article III's "case" or "controversy" language.'" *Id.* at 715 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  To determine whether a claim is ripe, the court must "balance '(1) the fitness of the issues for judicial decision, and (2) the hardship to the

4

parties of withholding court consideration.'" *Planned Parenthood of Gulf Coast, Inc.*

*v. Gee*, 862 F.3d 445, 456 (2017) (quoting *Texas v. United States*, 497 F.3d 491, 498

(5th Cir. 2007)). When only legal questions remain, a case is generally ripe for

adjudication. *Id.* "[E]ven where an issue presents purely legal questions," however,

"the plaintiff must show some hardship in order to establish ripeness." *Cent. & S. W.*

*Servs., Inc. v. EPA*, 220 F.3d 683, 690 (5th Cir. 2000). The type of hardship necessary

to confer standing includes "legal harms, such as the harmful creation of legal rights

or obligations; practical harms on the interests advanced by the party seeking relief;

and the harm of being 'force[d] . . . to modify [one's] behavior in order to avoid future

adverse consequences.'" *Texas*, 497 F.3d at 499 (quoting *Oh. Forestry Ass'n v. Sierra*

*Club*, 523 U.S. 726, 734 (1998)).

### B.    Failure to State a Claim

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim,

the Court must "accept all well-pleaded facts as true and view those facts in the light

most favorable to the plaintiff." *Hines v. Alldredge*, 783 F.3d 197, 200–01 (5th Cir.

2015) (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Even so, a complaint

must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining

whether a complaint states a plausible claim for relief [is] . . . a context-specific task

that requires the reviewing court to draw on its judicial experience and common

sense." *Id.* at 679. Although the complaint need not set out "detailed factual allegations," it must set forth something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

### A. Substantive Due Process

#### 1. *Cumulative Effects Challenge*

Women have a long-established right "to choose to have an abortion before viability and to obtain it without undue interference from the State." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846 (1992) (affirming the essential holding of *Roe v. Wade*, 410 U.S. 113 (1973)). An undue burden "exists if a regulation's 'purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability.'" *Gonzales v. Carhart (Carhart II)*, 550 U.S. 124, 146 (2007) (quoting *Casey*, 505 U.S. at 878). This is true even if the State is seeking to further a legitimate governmental interest in assuring that abortions are performed safely. *See Whole Woman's Health v. Hellerstedt*, ___ U.S. ___, 136 S. Ct. 2292, 2309 (2016). "The rule announced in *Casey* . . . requires that courts consider the burdens a law imposes on abortion access together with the benefits those laws confer." *Id.* At the motion to dismiss stage, Plaintiffs must plausibly plead that the law has the purpose or effect of creating an undue burden on a woman's right to seek an abortion. *See Carhart II*, 550 U.S. at 146.

Defendants argue that Plaintiffs' substantive due process claim—which asserts that OAFLL, as enacted through LDH's regulations, and twelve other

provisions of Louisiana law impose an undue burden on women seeking an abortion in Louisiana—should be dismissed because a cumulative effects challenge is not colorable in the context of abortion rights. (Doc. 22-1 at p. 10). Moreover, Defendants assert that Plaintiffs have failed to plead with specificity which regulations they are challenging and how those specific regulations burden access to abortion in Louisiana. (*Id.* at p. 9). Because OAFLL empowers the State to promulgate individual regulations, Defendants claim that many of the regulations are reasonable and that, alternatively, Plaintiff lacks standing to challenge other regulatory provisions (*Id.* at p. 13–14). Defendants argue that Plaintiffs must identify "exactly which regulations they challenge" (Doc. 57 at p. 10, l. 20), which Defendants speculate could take the form of "a 2,000 page complaint addressing 500 regulatory requirements," (*id.* at p. 11, ll. 13–14).

Plaintiffs disagree. First, Plaintiffs claim that Supreme Court precedent, primarily *Hellerstedt*, requires that the Court analyze the combined effect that laws have on access to abortion. (Doc. 32 at p. 4). Additionally, Plaintiffs argue that, in attacking the application of OAFLL as applied through its regulation and enforcement provisions, they have asserted a cognizable claim. (*Id.* at p. 5). In other words, Plaintiffs are challenging the OAFLL regulatory scheme as a whole, not each individual regulation implementing OAFLL. (*Id.* at pp. 5–6). Plaintiffs argue that their complaint sets out detailed, factual allegations that the challenged laws "make[] obtaining abortion care more invasive, confusing, difficult, and costly for patients." (*Id.* at p. 6).

Turning first to Defendant's argument that Plaintiffs cannot bring a cumulative effects challenge to Louisiana's abortion laws, the Court concludes that such a challenge is allowed in the abortion context. Resolution of this issue requires application of the Supreme Court's recent precedent in *Hellerstedt*.[4] 136 S. Ct. 2292. At issue in *Hellerstedt* were two Texas laws. *Id.* at 2299. The first law required that abortion clinics have hospital admitting privileges. *Id.* The second law required that abortion facilities in Texas meet "the minimum standards adopted under [the Texas Health and Safety Code section] for ambulatory surgical centers." *Id.* (quoting Tex. Health & Safety Code Ann. § 245.10(a)). Although the plaintiffs in the *Hellerstedt* case challenged only two laws, those laws mandated that abortion clinics conform with dozens of individual regulations, but the Supreme Court, in striking down those two laws, refused to "invalidate . . . only those specific surgical-center regulations that unduly burden the provision of abortions, while leaving in place other surgical-center regulations." *Id.* at 2319.

Notably, the Supreme Court held that the Fifth Circuit used an incorrect standard when analyzing whether abortion restrictions impose an undue burden and mandated "that courts consider the burdens a law imposes together with the benefits

---

[4] In addition to *Hellerstedt*, "the [Supreme] Court [has] looked to the regulatory scheme as a whole—including the State's decision to *not* regulate other aspects of the abortion decision—to determine whether there was an undue burden," which "acknowledge[s] the relevance of the overall regulatory scheme" to the undue burden analysis. Marlow Svatek, *Seeing the Forest for the Trees: Why Courts Should Consider Cumulative Effects in the Undue Burden Analysis*, 41 N.Y.U. Rev. L. & Soc. Change 121, 136–37 (2017). For example, "in [*Carhart I*], Justice O'Connor concluded that Nebraska's statute was unconstitutional; however, she noted that it likely would *not* be unconstitutional '[i]f there were adequate alternative methods for a woman to safely obtain an abortion before viability[.]'" *Id.* at 136 (quoting 530 U.S. 914, 951 (O'Connor, J. concurring)).

those laws confer." *Id.* at 2309. The Supreme Court also approvingly cited the district court's analysis and application of "the correct legal standard." *Id.* at 2310. The district court considered "the cumulative results" of the two laws at issue. *Whole Woman's Health v. Lakey*, 46 F.Supp.3d 673, 682 (W.D. Tex. 2014), *aff'd in part, vacated in part, rev'd in part sub nom. Whole Woman's Health v. Cole*, 790 F.3d 563 (5th Cir. 2015), *rev'd sub nom. Whole Woman's Health v. Hellerstedt*, ⸺ U.S. ⸺, 136 S.Ct. 2292 (2016).

In addition to the Supreme Court's strong implication that Courts should consider abortion regulations in connection with the larger regulatory scheme, other circuits that have addressed the issue have squarely held that courts should address the cumulative effects of abortion regulations. *See Planned Parenthood of Wis,, Inc. v. Van Hollen*, 738 F.3d 786, 796 (7th Cir. 2013) (holding that "[w]hen one abortion regulation compounds the effects of another, the aggregate effects on abortion rights must be considered"); *Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 915 (9th Cir. 2014) (considering "the ways in which an abortion regulation interacts with women's lived experience, socioeconomic factors, *and other abortion regulations*" when performing an undue burden analysis) (emphasis added).

Further, courts routinely allow cumulative effects challenges where other constitutional rights are at issue, and Defendants have failed to explain why abortion laws should warrant different treatment. *See Clingman v. Beaver*, 544 U.S. 581, 607–08 (2005) (O'Connor J., concurring) ("A panoply of regulations, each apparently defensible when considered alone, may nevertheless have the combined effect of

severely restricting participation and competition [in voting]."); *Wilson v. Seiter*, 501 U.S. 249, 304 (1991) (Eighth Amendment); *Kassel v. Consol. Freightways Corp. of Del.*, 450 U.S. 662, 667 (1981) (dormant commerce clause); *Murdock v. Pennsylvania*, 319 U.S. 105, 115 (1943) (First Amendment); *Miller v. Carson*, 563 F.2d 741, 746 n.6 (5th Cir. 1977) (substantive due process and Eighth Amendment).

Finally, prudential considerations convince the Court that a cumulative effects challenge to Louisiana's abortion laws should be sustained. To examine laws in a vacuum, one at a time, without examining how they fit into "a *reasonable* framework," *Casey* at 505 U.S. at 847, would allow the State to transform unconstitutional action into constitutional action by splitting the action into separate statutes or regulations. In other words, a state is not permitted to attack abortion providers in a death-by-a-thousand-cuts strategy, evading review by legislating in a piecemeal fashion. "The inescapable fact is that adjudication of substantive due process claims may call upon the Court in interpreting the Constitution to exercise that same capacity which by tradition courts always have exercised: reasoned judgment." *Id.* at 849.

Having determined that a cumulative effects challenge is permissible, the Court finds that Plaintiffs have adequately pleaded such a challenge. In the case of the twelve specific statutes that govern Doctor Plaintiffs and patients, the analysis is straightforward. Plaintiffs pleaded with specificity that the cumulative burden of the statutes outweigh their purported health benefits. For example, Plaintiffs claim that limiting the universe of those who can perform abortions is not medically justified. (Doc. 1 at ¶¶ 26, 153, 195, 197). Plaintiffs further allege that the health information

10

that they are required to provide patients includes misleading, inaccurate information—such as linking an increased risk of breast cancer to abortion—and that the recordkeeping requirements are unduly burdensome and invasive to their patients' privacy. (*Id.* at ¶¶ 26, 155–57, 196–98). For these twelve enumerated statutes, Plaintiffs have pleaded that when the medical benefits are weighed against the burdens imposed, they create an undue burden.

Although the analysis is less straightforward concerning the challenge to OAFLL, the Court nonetheless concludes that, at the motion to dismiss stage, Clinic Plaintiff has adequately pleaded that OAFLL, as applied through regulations, imposes an undue burden on Clinic Plaintiff. OAFLL is the fountainhead from which the State's restrictions on Clinic Plaintiff flows. It is a broad grant of rulemaking authority to LDH, and establishes that Clinic Plaintiff must conform to those rules and regulations promulgated by LDH. Although Defendants argue that Clinic Plaintiff should be forced to specify each and every regulation challenged, even if it results in a "2,000 page complaint," the Court concludes that Clinic Plaintiff has adequately pleaded its claim pursuant to Rule 8's requirement for "a short and plain statement of the claim showing that the pleader is entitled to relief."

Clinic Plaintiff alleges in detailed, specific ways how Louisiana has used the rulemaking authority conferred by OAFLL in a manner that imposes an undue burden on Clinic Plaintiff. For instance, Clinic Plaintiff claims that LDH's survey procedures "are disproportionately time-consuming and expensive for [Clinic Plaintiff] compared to healthcare providers offering similar or higher risk

11

procedures." (Doc. 1 at ¶¶ 169–75). Clinic Plaintiff further insists that the State issues regulations without providing any time for Clinic Plaintiff to come into compliance with those regulations, rescinds and reissues regulations over short periods of time, and issues emergency regulations in the absence of an emergency. (*Id.* at ¶¶ 56, 60–88). Clinic Plaintiff argues that these constantly shifting regulations have forced the closure of the majority of abortion clinics in the State, which has increased the burden on women seeking to avail themselves of a constitutionally protected action. (*Id.* at ¶¶ 203–19). According to Plaintiffs, the burden the State places on abortion clinics through its exercise of rulemaking authority under OAFLL outweighs any health benefits conferred by the regulations. (*Id.* at ¶¶ 92–94).

In other words, Plaintiffs do not allege that every exercise of rulemaking authority under OAFLL has resulted in an undue burden; rather, Plaintiffs allege that the manner in which LDH implements OAFLL, which includes some onerous regulations that have minimal or no health benefits, has created an undue burden. Plaintiffs' argument is strengthened by the Supreme Court's opinion in *Hellerstedt*, which struck down a Texas law that mandated abortion clinics follow all the regulations of surgical centers. 136 S. Ct at 2319. There, the Supreme Court did not require the plaintiffs to parse which surgical center requirements were unduly burdensome and which were not; instead, it struck down the statute that imposed the regulations on abortion clinics.[5]

---

[5]. The Court recognizes that OAFLL is distinguishable from the Texas surgical center requirements at issue in *Hellerstedt* because the Texas regulations were not the primary means through which Texas regulated abortion clinics. 136 S. Ct. at 2314. Further, the Court appreciates Defendants' concern that some regulations may not impose an undue burden, but that concern can be addressed at a later

## 2.    Burford *Abstention*

Alternatively, Defendants argue that the Court should decline to review the State's regulatory scheme based on the *Burford* abstention doctrine. (Doc. 22-1 at pp. 10–11).  *Burford* abstention applies where "the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Estate of Merkel v. Pollard*, 354 F. App'x 88, 93 (5th Cir. 2009) (unpublished) (per curiam).  The Fifth Circuit has enumerated a five-factor test for *Burford* abstention: "(1) whether the cause of action arises under state or federal law, (2) whether the case requires inquiry into unsettled issues of state law, or into local facts, (3) the importance of the state interest involved, (4) the state's need for coherent policy in that area, and (5) the presence of a special state forum for judicial review." *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 314 (5th Cir. 1993).

The Court finds that *Burford* abstention is inappropriate.  Regarding the first factor, it is apparent from the face of the complaint that Clinic Plaintiff's substantive due process claim arises exclusively under federal law, and regarding the second factor, Clinic Plaintiff's claim is based on the application of Louisiana's existing abortion law, not an inquiry into unsettled areas of state law.  Although under the third factor the State has an important interest in ensuring that abortions are performed safely and in demonstrating its respect for life, Clinic Plaintiff has a countervailing interest in ensuring that a woman's right to have an abortion is not

---

stage, if need be, by narrowing the issues at the summary judgment stage of the case or by more narrowly tailoring any remedy.

unduly burdened by the State. Similarly, under the fourth factor, the State needs coherent health regulations, but the Court has an independent duty to examine whether those regulations place an undue burden on the right to an abortion. On the fifth factor, the parties disagree over whether a special state forum for judicial review exists. Defendants point to specific avenues for challenging state regulatory provisions. (Doc. 22-1 at p. 18) (citing La. Rev. Stat. §§ 49:953(B)(1)(b)(3); 49:964(B); 40:2175(G)). Clinic Plaintiff argues that it is not challenging a particular regulatory decision, but the entire regulatory scheme as applied to it. (Doc. 32 at p. 13). Accordingly, the Court finds that the *Burford* factors, on the whole, militate against abstention.

The parties' disagreement about the final *Burford* factor illustrates a broader problem with Defendants' argument. Fundamentally, "*Burford* abstention is intended to avoid recurring and confusing federal intervention in an ongoing state scheme." *Wilson*, 8 F.3d at 315. But that is not what is at issue here. Clinic Plaintiff is challenging the constitutionality of the State's regulatory scheme, not an individual determination that arises from that scheme. As the First Circuit explained when holding that *Burford* did not apply to a challenge of a state's abortion law, "[i]f plaintiff succeeds, what will occur is not an ongoing intermeddling with the state [officials] but a prohibition of an unconstitutional process." *Planned Parenthood League of Mass. v. Bellotti*, 868 F.2d 459, 465 (1st Cir. 1989). An analogy is instructive. Although a state certainly has a strong interest in creating a

comprehensive scheme for gun licensing and ownership, that scheme would still be susceptible to a Second Amendment challenge.

## B.    Procedural Due Process

Clinic Plaintiff brings a procedural due process claim challenging La. Rev. Stat. § 40:2175.6(G), which provides that the Secretary of LDH may revoke an license for a "violation of any provision of [OAFLL], in violation of the licensing rules promulgated by [LDH], or in violation of any other state law or regulation." Revised Statutes § 40:2175.6(H) further empowers the Secretary of LDH to "issue an immediate suspension of a license if an investigation or survey determines that the applicant or licensee is in violation of any provision [of OAFLL], in violation of the rules promulgated by [LDH], or in violation of any other federal or state law or regulation." Clinic Plaintiff argues that this broad grant of authority without notice and an opportunity to be heard before a neutral decision-maker before any action is taken violates its procedural due process rights. (Doc. 1 at ¶¶ 224–26).

The Court finds that Plaintiff's procedural due process claim is foreclosed by *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710 (2012). In *Greenstein*, the Fifth Circuit held that a challenge to the same provisions at issue here was unripe where the plaintiff had yet to suffer any adverse action under the law and that the plaintiff would suffer no hardship if the Court withheld consideration of the provision. *Id.* at 715–16.

Clinic Plaintiff argues that it is distinguishable from the plaintiffs in *Greenstein* because the state has previously taken adverse action against it by

15

suspending its license. Although Clinic Plaintiff's license was suspended for three weeks based on inspections conducted in 2010 and 2011, Clinic Plaintiff settled its claims arising out that suspension with the State in 2013. (*See* Doc. 22-3). The State has taken no other adverse action against Clinic Plaintiff since that settlement. Clinic Plaintiff has therefore not alleged that any *current* or *imminent* threat to its license exists, such that its claim is ripe for adjudication. *See Greenstein* 691 F.3d at 717. At this time, Clinic Plaintiff's procedural due process claim must be dismissed on ripeness grounds.

## C. Fourth Amendment Claims

A warrantless search is presumed to be invalid. *Horton v. California*, 496 U.S. 128, 110 (1990). However, "closely regulated industry[ies]" have a reduced expectation of privacy, which may make a warrantless search reasonable. *New York v. Burger*, 482 U.S. 691, 702 (1987). But even in the case of a "pervasively regulated buisness," *id.*, a warrantless search is constitutional "only (1) if there is a substantial governmental interest that informs the regulatory scheme pursuant to which the inspection is made, (2) if warrantless inspections are necessary to further the regulatory scheme, and (3) if the inspection program provides a constitutionally adequate substitute for a warrant, in terms of certainty and regularity of its application." *Beck v. Tex. State Bd. Of Dental Exam'rs*, 204 F.3d 629, 638 (5th Cir. 2000).

Plaintiffs allege that the warrantless search provision of OAFLL violates their Fourth Amendment right against unreasonable searches. (Doc. 1 at ¶¶ 227–28).

16

Specifically, Plaintiffs claims that, as applied, Revised Statutes § 40:2175.6 permits unlimited warrantless inspections of abortion clinics without notice. (*Id.* at ¶¶ 104–05). Plaintiffs contend that Defendants have complete access to patients' confidential medical records without a warrant. (*Id.* at ¶¶ 107). Plaintiffs point out that at least one federal circuit has held that abortion clinics are not subject to the closely regulated business exception because patients' "expectation of privacy is *heightened*, given the fact that the clinic provides a service grounded in a fundamental constitutional liberty, and that all provision of medical services in private physicians' offices carries with it a high expectation of privacy for both physician and patient." *Tucson Women's Clinic v. Eden*, 379 F.3d 531, 550 (9th Cir. 2004);[6] *accord Margaret S. v. Edwards*, 488 F. Supp. 181, 216 (E.D. La. 1980) (striking down a prior Louisiana law that mandated warrantless inspections of abortion clinics in part because of the "history of respect towards the recognized need for privacy in the doctor–patient relationship"). .

Defendants argue that abortion clinics are a closely regulated business that is susceptible to warrantless searches. (Doc. 22-1 at p. 23). Further, they claim that the statutes that authorize warrantless inspections provide adequate procedural safeguards that ensure "the inspection program provides a constitutionally adequate substitute for a warrant." (*Id.* at p. 26). Defendants insist that other statutes effectively protect patient information, which ameliorates Plaintiffs' concerns about patient privacy. (*Id.*).

---

[6] No other circuit has held to the contrary.

Defendants' arguments are unpersuasive because they primarily raise factual issues that have yet to be determined, rather than showing that Plaintiffs have failed to state a claim. To the contrary, Plaintiffs have pleaded a number of specific, factual allegations, which when assumed to be true, could render the searches unreasonable. (Doc. 1 at ¶¶ 105–07). The Court notes that it is not bound by the prior opinions in *Eden* and *Edwards*, but they are persuasive authority that make dismissal of Plaintiffs' Fourth Amendment claim difficult at this stage, pending further factual findings concerning whether an abortion clinic is a closely regulated business. Therefore, the Court finds that Plaintiffs have stated a plausible claim that their Fourth Amendment rights were violated.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that the Motion to Dismiss (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiffs' procedural due process claim is unripe and therefore **DISMISSED**.

Baton Rouge, Louisiana, this 29th day of March, 2018.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**