UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JUNE MEDICAL SERVICES, LLC, d/b/a HOPE MEDICAL GROUP FOR WOMEN, on behalf of its patients, physicians and staff, ET AL. | CIVIL ACTION |
| VERSUS | |
| REBEKAH GEE, in her official capacity as Secretary of Health of the Louisiana Department of Health, ET AL. | NO: 17-CV-00404-BAJ-RLB |

RULING AND ORDER

Before the Court is Defendants' **Motion for Partial Dismissal of Plaintiffs' First Amended Complaint, or in the Alternative, for Certification Under 28 U.S.C. § 1292(b). (Doc. 95).** Plaintiffs filed a response to Defendants' motion on September 17, 2018. (Doc. 98). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Oral argument is not necessary. For the reasons stated below, Defendants' Motion is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As discussed in prior rulings, approximately 312,000 reproductive-aged women reside in the State of Louisiana. (Doc 1 at ¶¶ 191, 201-202). Only three medical clinics offer abortion services to this entire population, one of the lowest ratios in the United States. (*Id.* at ¶ 203). Over the past several years, the State of Louisiana has enacted an increasing number of laws aimed at regulating abortion providers, thereby

substantially impacting a woman's access to what the United States Supreme Court has determined to be a Constitutionally guaranteed right.

One such law is the 2001 Outpatient Abortion Facility Licensing Laws ("OAFLL")[1], which governs the personnel, internal policies, facility, reporting, recordkeeping, and licensing of clinics that offer abortion services. (*Id.* at ¶¶ 4, 50). The Louisiana Legislature substantially revised OAFLL in 2010, and major regulations have been promulgated under the statute, most notably in 2012, 2013, 2015, 2016 and 2017. (*Id.* at ¶¶ 53, 61, 71, 74-75, 77, & 87). Today, OAFLL and its accompanying regulations impose over 1,000 individual requirements on outpatient abortion clinics.[2] (*Id.* at ¶ 23). For example, one of the regulations allows for the warrantless inspection of abortion clinics. (*Id.* at, ¶ 103). Another provision empowers the Secretary of the Louisiana Department of Health ("LDH")[3] to immediately suspend a clinic's license for any violation of OAFLL, its regulations, or any other federal or State law or regulation, without the benefit of a hearing prior to the revocation, and without any other due process protections otherwise afforded to clinics that perform other forms of medical services. (*Id.* at ¶ 101).

In addition to OAFLL, Louisiana has passed several other statutes, ostensibly for the protection of patients, governing the training and qualifications of doctors who perform abortions. (*Id.* at ¶ 26). Plaintiffs challenge twelve specific statutory

---

[1] Codified as La. Rev. Stat. §§ 40:2175.1-2175.6, 40:2199(A)(1); La Admin Code tit. 48, §§ 4401-53.

[2] Such regulations are too numerous to specifically identify here.

[3] Formerly named the Louisiana Department of Health and Hospitals.

provisions in their Amended Complaint: La. Rev. Stat.§ 14:32.9 (criminalizing abortions by non-licensed physicians); § 14:32.9.1 (criminalizing dismemberment abortions); § 40:1061. l0(A)(l) (setting qualifications for physicians who perform abortions); § 40:1061. 10(D)(l) (requiring that the physician performing the abortion to also perform the mandatory pre-abortion ultrasound); § 40:1061.11 (requiring that the physician who prescribes abortion drugs as part of an abortion procedure be in the room when they are first administered); § 40:1061.16(B) (requiring that certain printed materials be provided to women at least seventy-two hours prior to an abortion); § 40:1061.16(C) (mandating that the printed materials be provided individually, in a private room, and that the abortion clinic maintain records of having distributed the materials); § 40:1061.17(B) (setting forth certain informed consent requirements)[4]; § 40:1061.17(C)(8) (requiring a "prominent link" to LDH's abortion alternatives website be displayed on the webpages of abortion clinics)[5]; § 40:1061.17(G) (requiring physicians to confirm that they offered the required informed consent pamphlets to each patient, and whether such materials were accepted); § 40:1061.19 (mandating the retention of certain records); and, § 40:1061.21 (setting forth reporting requirements for all abortions performed).

Plaintiffs in this case are June Medical Services, LLC d/b/a Hope Medical Group for Women, on behalf of its patients, physicians, and staff, and six doctors who

---

[4] Plaintiffs allege that the materials abortion providers are required to distribute to patients include false or misleading information.

[5] Plaintiffs also allege that the information on the LDH's abortion alternatives website contains false or misleading information.

perform abortion procedures. (*Id.* at ¶¶ 13-17).  Plaintiffs originally brought their Complaint alleging the following: (1) that the challenged laws and regulations violate their substantive due process rights by placing an undue burden on women seeking an abortion; (2) that the State's power to immediately suspend a clinic's license for any violation of state or federal law violates their procedural due process rights; (3) that the warrantless search provision violates their Fourth Amendment right to privacy.

On August 20, 2017, Defendants brought a motion to dismiss Plaintiffs' Complaint.  On March 30, 2018, the Court entered an order granting in part and denying in part Defendants' motion (Doc. 60) in the following manner:

1. Plaintiffs' cumulative effects challenge to the myriad of laws passed in Louisiana, which allegedly impermissibly restrict access to abortion services, survived the motion to dismiss. (*Id.* at pp. 10-11).

2. Plaintiffs' procedural due process challenges to various state-law statutes were denied as unripe, as Plaintiffs had not, at that time, suffered any adverse actions under the challenged licensing scheme and would suffer no adverse outcomes should the Court withhold consideration of the laws in question. (*Id.* at p. 16).

3. Plaintiff's Fourth Amendment warrantless search claims survived the motion to dismiss. (*Id.* at p. 18).

On Defendants' motion for interlocutory appeal (Doc. 65), the Court certified its March 30, 2017 ruling for appeal to the United States Court of Appeals for the Fifth Circuit. (Doc. 76). The Court granted Defendants' motion on the grounds that this matter involves a controlling question of law as to which there was a substantial ground for difference of opinion and because an immediate appeal from the order may advance the ultimate resolution of the litigation.  Specifically, the Court found that

Defendants raised a legitimate question concerning whether Plaintiffs' key claim, the viability of Plaintiffs' "cumulative effects" claim, was colorable. Plaintiffs filed a motion requesting that the Court rescind its certification for interlocutory appeal and to be provided the opportunity to amend the pleadings (Doc. 79).

## II.    LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.  To dismiss a matter, "it should appear from the allegations that a cause of action does not exist, rather than that a cause of action has been defectively stated." *Twombly*, 550 U.S., 581.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action"
is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court
"accepts all well-pleaded facts as true and views those facts in the light most favorable
to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010).

### B. Interlocutory Appeal

Cases subject to interlocutory appeal must involve a controlling question of law
that would materially advance the ultimate termination of the litigation. *Clark-Dietz
& Assocs.-Engineers, Inc. v. Basic Const. Co.*, 702 F.2d 67, 68 (5th Cir. 1983). Further,
where a case involves questions of first impression which could provoke substantial
difference of opinion, interlocutory appeal should be allowed. *Id.*

### III.   ARGUMENTS

Defendants argue that Plaintiffs' Amended Complaint merely repeats the
same deficiencies that resulted in this Court certifying its last order for appeal, and
simply packages the same arguments in a different form.   However, Plaintiffs'
Amended Complaint differs from its original Complaint in the following noteworthy
ways.

### A. Count One

Plaintiffs' first claim for relief in the Amended Complaint asserts that the
substantive due process challenge relates directly to OAFLL; specifically, the term
"outpatient abortion facility" as codified in La. Rev. Stat. § 40:2199(A)(1), and as
applied through the implementation of OAFLL regulations. (Doc. 87 at p. 55).
Plaintiffs further allege that, as applied, several provisions of OAFLL violate

Plaintiffs' patients' rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution because they place an undue burden on a woman's right to avail themselves of abortion services before viability of the fetus. (*Id.*). In the original Complaint, Plaintiffs did not specify any particular portions of OAFLL that they claim violate the Fourteenth Amendment's rights to patients, and claim that OAFLL, as well as La. Rev. Stat. §§ 14:32.9, 32.9.1; and La. Rev. Stat. §§ 40:1061.10(A)(1), 1061.10(D)(1), 1061.11, 1061.16(B), 1061.16(C), 1061.17(B), 1061.17(C)(8), 1061.17(G), 1061.19, and 1061.21. ("Health Statutes") impose the cumulative effect of unduly burdening the rights of women seeking abortion services. (Doc. 1 at p. 53).

Defendants' challenge to Count One shall be addressed in the Court's discussion of Count Five of the Amended Complaint, as Defendants' challenges apply to both.

**B. Count Two**

Plaintiffs' second claim for relief in the Amended Complaint sets forth a substantive due process right to liberty and privacy, and again, specifically identifies OAFLL regulations as the subject of the claim. (Doc. 87 at ¶ 187). Plaintiffs then list each specific OAFLL regulation they seek to challenge. (*Id.*). For each of the twelve listed regulations, Plaintiffs allege that the regulation:

> [v]iolates Plaintiffs' patients' right to liberty as guaranteed by the due process clause of the Fourteenth Amendment to the United States Constitution, because it imposes an undue burden on women's right to choose abortion before viability.

(*Id.*). A plain reading of the listed regulations indicates that the regulations focus

7

mainly on certain licensing procedures imposed on abortion service providers.

Count Two in the original Complaint makes claims for procedural due process rights to liberty and property, claiming that Plaintiffs have a property interest in the outpatient abortion facility license. (Doc. 1 at ¶ 225). Plaintiffs allege that that OAFLL allows Defendants to take action against a clinic's license without first giving clinics constitutionally required notice prior to an enforcement action. (*Id.*). Plaintiffs claim that OAFLL, on its face, and as administered by the LDH, arbitrarily and capriciously deprives Plaintiffs of liberty and property interests and vests an impermissible degree of subjective discretion in the Office of the Secretary by authorizing the Secretary to suspend or revoke an abortion facility's license based on any violation of federal, state or local law. (*Id.* at ¶ 226).

Defendants argue that Plaintiffs, in merely listing the challenged OAFLL regulations instead of describing the alleged unconstitutional nature of the provisions, with specificity, have not changed their pleadings in an appreciable manner. Defendants argue that Plaintiffs' simple statement that the regulations impose an undue burden on patients' Fourteenth Amendment rights is insufficiently pled. (Doc. 95 at p. 20). Defendants further argue that although Plaintiffs request an injunction against several challenged regulations in their entirety, Plaintiffs do not actually object to all actions required to be performed in accordance with the challenged regulations. (*Id.*). By way of example, Defendants claim that Plaintiffs challenge the record-keeping requirements of La. Admin. Code § 48:4425 generally, but do not object to the requirement that providers report instances of rape, sexual

battery, incest, and carnal knowledge of a minor. (*Id*.).[6]

### C. Count Three

Plaintiffs' third claim for relief in the Amended Complaint sets forth a substantive due process right to liberty and privacy, and specifically lists the Health Statutes as the offending statues. (Doc. 87 at ¶ 189). Plaintiffs list all of the Health Statutes, claiming that each of them:

> [v]iolates Plaintiffs' patients' rights to liberty as guaranteed by the due process clause of the Fourteenth Amendment to the United States Constitution, because it imposes an undue burden on women's right to choose abortion before viability.

(*Id*. at ¶ 190). This portion of the Amended Complaint has no corollary in the original Complaint.

Defendants again claim that simply naming each of the Health Statutes and making general identical allegations regarding each of them does little to alter the cumulative nature of Plaintiffs' challenges to Louisiana's regulatory scheme.

### D. Count Four

Plaintiffs' fourth claim in the Amended Complaint sets forth an argument relating to protections from unreasonable searches. (Doc. 87 at ¶ 191). Plaintiffs argue that OAFLL, by subjecting Plaintiffs to unannounced searches, regardless of whether probable cause has been established, violates Plaintiffs' and their patients' right to be free from unreasonable searches. (*Id*.).

---

[6] The Court notes that it appears that Plaintiffs' main objection to La. Admin. Code § 48:4425 is the requirement that such records be made available to LDH within 24 hours of being requested. The failure to abide by the regulation may subject the abortion provider to the loss of its license based on having violated a state, local, or federal law, regulation, or ordinance, as set forth under La. Admin. Code § 48:4403.

This claim corresponds with Plaintiffs' third claim for relief in the original Complaint, which is substantively identical. (Doc. 1 at ¶ 228).

### E. Count Five

Plaintiffs' fifth claim for relief is made on the grounds of equal protection for providers of abortion services. (Doc. 87 at ¶ 193). Plaintiffs allege that when considered alongside Louisiana's other regulatory schemes, OAFLL, the OAFLL regulations, and the Health Statutes, violate Plaintiffs' rights to equal protection by singling out abortion services from all other medical procedures offered in the State of Louisiana. (*Id.*). Plaintiffs further argue that by subjecting abortion providers to more burdensome requirements than other providers of medical care in Louisiana, OAFLL effectively functions as a deprivation of Plaintiffs' rights to equal protection under the Fourteenth Amendment.

Plaintiff's original Complaint does not contain a fifth claim for relief, although Defendants argue that Count Five of the Amended Complaint is merely a re-urging of a previously denied claim.

Defendants challenge Count One and Count Five of Plaintiffs' Amended Complaint as a cumulative challenge to the entirety of the regulatory regime that Louisiana has created. Defendants characterize Plaintiffs' Count One as an argument that, when taken as a whole, OAFLL plus the identified regulations impose an undue burden on a woman's right to avail themselves of abortion services. (*Id.* at p. 36). Defendants claim that Counts One and Five should be dismissed for the sole reason that abortion regulations must be challenged individually and not collectively.

(*Id.*).  Defendants claim that only an individualized, statute by statute analysis of abortion laws makes sense in the context of either an undue burden or equal protection analysis. (*Id.* at p. 6).

Defendants further argue that in limiting their arguments to certain enumerated statutes and regulations, Plaintiffs are attempting to obfuscate the fact that Plaintiffs still challenge OAFLL in its entirety, which is prohibited.  (*Id.* at p. 7). Defendants claim that such a challenge is foreclosed by the United States Supreme Court's ruling in *Whole Women's Health v. Hellerstedt*, 136 S.Ct 2292 (2016) and *Ohio v. Akron Ctr. for Reprod. Health,* 497 U.S. 502 (1990), where in each case, the Court addressed each of the challenged provisions individually to reach to its conclusion, rather than analyzing the cumulative effects of the statutes and regulations. (Doc. 95-1 at p. 6). Therefore, Defendants argue, because Plaintiffs essentially challenge the entirety of OAFLL by merely listing each statute, it does not matter which of the specific provisions are actually named in the Amended Complaint; such a challenge is foreclosed by Supreme Court precedent.

Defendants also claim that the Court lacks Article III jurisdiction to consider a challenge to many of the individual laws included in Plaintiffs' cumulative effects challenge. (*Id.* at p. 8). Defendants allege that Plaintiffs' arguments regarding licensing procedures have already been foreclosed by Fifth Circuit precedent, and have been addressed by this Court in a prior ruling.  (*Id.* at p. 9).  Defendants cite *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 712 (5th Cir. 2012), wherein the Fifth Circuit found that challenges to OAFLL's licensing procedures were unripe in the

11

absence of a particular licensing controversy. Defendants claim that a similar scenario is present here because Plaintiffs have not established that a licensing controversy arose at any time prior to the filing of this action, and that this Court has already rejected Plaintiffs' arguments on this matter as nonjusticiable. (*Id.*).

## IV.   LEGAL ANALYSIS

### A. Defendants' Motion to Dismiss is Denied

The Court has previously addressed many of Defendants' arguments asserted in the motion *sub judice* in its Order dated March 30, 2018 (Doc. 60).  In that Order, the Court addressed Defendants' arguments against Plaintiffs' so called "cumulative challenge" to certain medical statutes enacted by the Louisiana Legislature.  In the prior Order, the Court relied on the foundational principle that, as the United States Supreme Court previously held, the right to privacy guaranteed by the Constitution applies to the decision to obtain an abortion, but that such rights must be considered against important state interests. *Roe v. Wade*, 410 U.S. 113, 154, 93 S. Ct. 705, 727, 35 L. Ed. 2d 147 (1973).  Further, the Court relied on *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846 (1992) wherein the Supreme Court found that women have a right to "choose to have an abortion before viability and to obtain it without interference from the State." This Court then addressed Defendants' opposition to Plaintiffs' cumulative effects challenge to various Louisiana statutes, finding that the ruling in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2320-2321 (2016), as revised (June 27, 2016), allows for such cumulative challenges.  The Court in *Hellerstedt* opined that courts:

[are not required to] go through the individual components of the different, surgical-center statute, let alone the individual *regulations* governing surgical centers to see whether those requirements are severable from each other as applied to abortion facilities. Facilities subject to some subset of those regulations do not qualify as surgical centers. And the risk of harm caused by inconsistent application of only a fraction of interconnected regulations counsels against doing so.

The Supreme Court also concluded that the inclusion of a severability clause in such statute does not force a plaintiff to attack each regulation in a piecemeal fashion. *Id.* at p. 2319. The Supreme Court also found that requiring a plaintiff to address each particular regulation on its face, when a statute itself is facially invalid, would inflict significant costs on both the courts and litigants. *Id.* In prior filings, Defendants themselves acknowledge this fact, and speculate that the pleadings in such a challenge "could take the form of a 2,000 page complaint addressing 500 regulatory requirements." (Doc. 60 at p. 7).

With respect to the applicable law which guides this Court, nothing has appreciably changed between Plaintiff's original Complaint and the filing of the Amended Complaint that would alter the Courts' decision to deny Defendants' motion to dismiss. In fact, Defendants themselves argue that Plaintiffs are merely "putting old wine in new bottles" (Doc. 95-1 at p. 19). The Court finds that if anything, Plaintiff's Amended Complaint attempts to address the regulations and statutes on an individualized basis, and that the Amended Complaint presents less of a blanket cumulative challenge now than what was featured in the original Complaint. The rule in *Hellerstedt* is clear: plaintiffs are permitted to bring cumulative challenges to groups of laws and regulations that may unlawfully infringe upon a woman's

13

constitutional right to avail themselves of abortion services as set forth in *Roe*. Therefore, pursuant to the Supreme Court rulings in *Roe*, *Casey*, and *Hellerstedt*, the Court finds that Plaintiffs have established a facially plausible argument that certain bundles of regulations and statutes may unlawfully restrict women's access to abortion services, such that Plaintiffs' cumulative effect claims, in the Amended Complaint, survive Defendants' motion to dismiss.

Defendants also request the Court to dismiss Plaintiff's challenges to multiple individual statutes that Plaintiffs set forth in the Amended Complaint, claiming that they are improperly pled. By way of example, Defendants seek to dismiss Plaintiffs' challenge to La. Admin. Code § 48:4403, which requires abortion providers to "comply with all applicable federal, state and local statutes, laws, regulations, and ordinances." Plaintiffs claim that this provision requires them to abide by unconstitutional laws, some of which are part of Plaintiffs' cumulative effects challenge. However, now that Plaintiffs have pleaded, on an individual basis, the components of what was originally a general cumulative effects challenge on a group of statutes and regulations, Defendants argue that the regulation itself could not possibly be justiciable, and therefore the challenge to its constitutionality must be dismissed. Plaintiffs listed such individual statues in an attempt to assuage the Court's concerns that its original cumulative effects challenge should be certified for Fifth Circuit review.

In a vacuum, Defendants' arguments appear persuasive. However, to take on each regulation, individually and separately, directly contradicts the guidance set

forth in the *Hellerstedt* ruling. Plaintiffs would be placed in an untenable position where they are forced to individually challenge many facially valid regulations, despite the fact that, taken together, such provisions may violate the directives of both *Planned Parenthood* and *Casey*. Forcing Plaintiffs to address each regulation individually, and without sufficient context, may result in the inability to challenge legislation with component parts that may appear innocuous, but when taken together, impermissibly infringe on a woman's constitutional right to avail herself of abortion procedures.

Federal pleading standards require all allegations to be "plausible on their face." To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A Rule 12(b)(6) motion is not "an appropriate device for testing the truth of what is asserted or for determining whether a plaintiff has any evidence to back up what is in the complaint." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002).

Defendants are sufficiently on notice that Plaintiffs intend to cumulatively, and to the extent possible, individually, challenge the validity of the statutes and regulations that govern abortion providers in the State of Louisiana, as allowed under *Hellerstedt*. Plaintiffs have presented adequate plausible arguments regarding how such regulations and statutes unconstitutionally burden women seeking abortion services. Furthermore, Plaintiffs have even gone so far as to list in the Amended Complaint the specific statutes they deem objectionable, and provide reasons, albeit

repetitive ones, as to why the individual statute runs afoul of the rights of Plaintiffs and their patients.  Plaintiffs are not required at this juncture to prove their case or to dispel all arguments against their claims.  Plaintiffs thus have stated claims that are sufficiently pled.

### B. Plaintiff's Challenges to the Licensing Regulatory Scheme

Defendants claim that Plaintiffs' Amended Complaint reurges causes of action that were previously barred by this Court in its March 30, 2018 Ruling and Order (Doc. 60).  Specifically, Defendants claim that Plaintiff's arguments regarding certain licensing procedures were already deemed by this Court to be unripe and nonjusticiable, because Plaintiffs were unable to establish that these licensing provisions have harmed them or their clients at the time of the filing of the original Complaint.  The Court denied Plaintiffs' argument that La. Rev. Stat. § 40:2175.6(G) and La. Rev. Stat. § 40:2175.6(H) violate Plaintiffs' procedural due process rights, as no Plaintiff has been adversely affected by the statutes, as required by the Fifth Circuit's ruling in *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710 (2012).  Plaintiffs now challenge the same statutory provisions on substantive, as opposed to procedural, due process grounds.

Section One of the Fourteenth Amendment sets forth that:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The courts have generally recognized two interpretations of the term "due

16

process of law" found in the Constitution: procedural due process rights and substantive due process rights. Plaintiffs originally challenged the licensing provisions on procedural due process grounds, which requires a showing that they themselves were subjected to, or denied, certain state actions, which resulted in the infringement upon a constitutionally protected property interest. *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 91 (5th Cir. 2011)(holding that a church's procedural due process challenge to the State's use of imminent domain to claim church property was unripe because the State's takings procedure had not been completed, and that an analysis of whether the church received "just compensation" was premature, thereby mooting the due process claim). Plaintiffs were unable to establish harm in their procedural due process challenge, and therefore, the Court dismissed that portion of the original Complaint as unripe. (Doc. 60).

The Courts have treated substantive due process claims for violations of non-fundamental, economic rights, differently from those involving "fundamental" rights. To establish a claim for a violation of economic substantive due process rights, a plaintiff must show that the state action is not rationally related to a legitimate governmental interest. *FM Prop. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996). However, when the *fundamental* right of a party is allegedly infringed, the courts apply the strict scrutiny standard, requiring the showing of a compelling government purpose for the state action. *Roe v. Wade* 410 U.S. 113, 155. However, no matter the standard, a violation of substantive due process occurs only

when the government deprives a party of liberty or property. *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988).

Plaintiffs' challenges to the licensing provisions can be framed as both economic and fundamental rights, and thus suitable for substantive due process challenges. However, framing the challenged statutes as substantive due process violations as opposed to procedural due process challenges does little to address the fact that Plaintiffs must still show that they have been harmed by the statutes before their claims are justiciable. The Supreme Court considered this exact issue when it determined that a childless married couple, referred to for the purpose of the case as the "Does," could not sustain a challenge to certain Texas abortion laws on substantive due process grounds based on a potential inability to terminate a pregnancy. *Roe*, 410 U.S. at 129. The Supreme Court found that the speculative nature of the Does' complaint was non-justiciable at that time, as the Does had not established that they had been harmed by Texas' abortion laws. *Id.*

At this point, Plaintiffs' claims are speculative and do not allege that they or their clients have suffered any direct harm due to the challenged licensing provisions. The Court also notes that this ruling is not at odds with its decision to allow Plaintiffs to move forward with their cumulative challenge to the overall regulatory scheme of abortion laws and regulations. Plaintiffs aver that those seeking abortions *have already* been harmed by the promulgation of certain laws that make it invasive, confusing, difficult, and costly for patents to exercise the right to obtain an abortion, but do not allege that the licensing procedures imposed on abortion providers have

contributed directly to such harm.  Furthermore, Plaintiffs' argument relating to the procedures for receiving and maintaining a license challenges the wide authority that LDH has to revoke a license for violations of *any* local, state, or federal law, rule, or regulation.  Plaintiffs claim that this requirement forces them to comply with the other rules and regulations they are challenging as unconstitutional.  Ostensibly, Plaintiffs do not challenge the requirement that they follow *any* laws, rules, or regulations.  Therefore, should Plaintiffs succeed on the remainder of their cumulative effects challenge, it should obviate the need for this Court to address Plaintiff's concerns with certain licensing procedures, as the objectionable portions would have been resolved in their favor.  If Plaintiffs are ultimately unsuccessful, then Plaintiffs can reurge their challenge once actual harm occurs.  Therefore, until Plaintiffs can establish that they have suffered harm as a result of the listed licensing procedures, such challenges are dismissed without prejudice as unripe.

### C. Interlocutory Appeal

Whether the Court shall certify the portion of this Order denying Defendant's motion for partial dismissal of Plaintiffs' Amended Complaint for immediate appeal turns on whether the issue is one of first impression, the resolution of which at this stage of the proceeding would materially advance the ultimate disposition of this case. This inquiry requires the Court to carefully consider the differences between the original Complaint and Amended Complaint and consider whether the Amended Complaint resolves the questions raised by Defendant in the Motion for Interlocutory Appeal (Doc. 65).

On review, while Plaintiffs' Amended Complaint lists various statutes and provides individual challenges to specific statutes and regulations, the Court largely agrees with Defendants that Plaintiffs' Amended Complaint merely repackages many of the same arguments made in the original Complaint. However, the Court concludes that even though Plaintiffs are permitted to file a cumulative effects challenge to laws regulating abortion providers under *Hellerstedt*, Plaintiffs have *also* offered sufficient facts to address each statute on an individual basis as well. Therefore, whether by virtue of *Hellerstedt*, or by the regular "plausibility pleading" standards required at this stage of the litigation, Plaintiffs have successfully pled their case. Furthermore, the Court finds that this is not a case of first impression. Put simply, Plaintiffs have properly pled a cumulative effects cause of action under *Hellerstedt*, and have sufficiently pled a cause of action for each challenged regulation or statute on an individual basis that meet the federal pleading standard.

Defendants argue that certifying this matter for appellate review could potentially remove some causes of action, causing the remainder of the case to proceed more expeditiously. The Court disagrees. Defendants' request for a certification for immediate appeal under 28 U.S.C. § 1292(b) is denied.

V.    **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendants' **Motion for Partial Dismissal of Plaintiffs' First Amended Complaint, or in the Alternative, for Certification Under 28 U.S.C. § 1292(b) (Doc. 95)** is **DENIED.**

Baton Rouge, Louisiana, this _29th_ day of March, 2019.

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**